IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

KEN COLE,

                Plaintiff,                Case No. 3:06 CV 884

-vs-

                                          <u>MEMORANDUM   OPINION</u>

AVADO BRANDS, INC.,

                Defendant.

KATZ, J.

This matter is before the Court on the defendant's motion for summary judgment (Doc. 19), the plaintiff's response (Doc. 20), and the defendant's reply (Doc. 21).  This Court has jurisdiction pursuant to  28 U.S.C. § 1331.  For the reasons enumerated herein, the defendant's motion for summary judgment is hereby granted and the case is dismissed.

**I. Background**

Plaintiff Kenneth Cole worked for Defendant Avado Brands, Inc. from around 1997 or 1998 until his termination in October 2005.  His last position was as a District Operator overseeing nine of Defendant's Don Pablo restaurants in various states, including Michigan and Ohio.

In October 2005 Plaintiff was terminated from employment by the Defendant.  Defendant claims the reason was inappropriate behavior with an hourly employee at Defendant's restaurant in Canton, Michigan.  Plaintiff claims the reason was actually discrimination based on Plaintiff's age.  In any case, Defendant offered Plaintiff a Benefits Agreement ("the Agreement") which

Plaintiff accepted and both parties executed on October 24, 2005.  The Agreement contains the following terms:

> 2. Pursuant to the Avado Brands Corporate Severance Plan ("the Plan"), the Company will pay [Cole] a severance payment of two weeks base pay, plus a Supplemental Severance Benefit equal to two weeks of Base Pay per year of service, subject to any applicable cap and other payment provisions described in the Plan.  The Company and [Cole] agree that the Basic Pay plus Supplemental Severance Pay is a maximum of 4 weeks of Base Pay.  Payment of the Supplemental Severance Pay Benefit pursuant to this Agreement will be paid on a bi-weekly basis through the end of the applicable Severance period. Such payment will be net of payroll and employment taxes or any other legally necessary deductions.
>
> \*\*\*
>
> In consideration for the benefits I am eligible to receive, except for any claims I may have for workers' compensation benefits, I hereby . . . release and discharge the Company . . . from any and all claims, demands, rights, actions, causes of action, suits, damages, losses, and expenses I now have or have had or may later claim to have had against them of whatever character in law or in equity known or unknown, suspected or unsuspected, from the beginning of time to the date of the execution of this Agreement.
>
> This release specifically includes but is not limited to breach of contractual rights and claims under any local, state or federal laws prohibiting discrimination in employment . . . and any other federal, local or state laws or common law theories relating to breach of contract, discrimination in employment, the termination of employment or personal injury including all claims for additional compensation, economic and non-economic, back pay or benefits (other than as provided for in this Agreement).
>
> For the purpose of implementing a full and complete release and discharge, I expressly acknowledge that this Agreement is intended to include in its effect, without limitation, all claims which I do not know or suspect to exist in my favor at the time of execution of this Agreement, and that this Agreement contemplates the extinguishment of such claim or claims.
>
> By signing this Agreement and accepting the compensation described above, I acknowledge that as part of this Agreement I am agreeing that I will not pursue any individual claim against the Company . . . in any federal, state or local court . . . .

Pl. Dep. Exh. 1, Benefits Agreement at 1-2. The three-page Agreement also contains the following language above Plaintiff's signature line:

> I FURTHER ACKNOWLEDGE AND AGREE THAT THIS AGREEMENT SETS FORTH MY ENTIRE AGREEMENT WITH THE COMPANY, THAT NO OTHER PROMISE OR AGREEMENT OF ANY KIND HAS BEEN MADE TO ME BY THE COMPANY TO CAUSE ME TO SIGN THIS AGREEMENT AND THAT THE ONLY CONSIDERATION FOR MY SIGNING THIS AGREEMENT IS SET FORTH COMPLETELY AND EXPRESSLY IN THIS DOCUMENT.

*Id.* at 3.

After signing the Agreement, Defendant paid Plaintiff an amount equivalent to four weeks of his base pay (approximately $8,000.00 gross compensation), which Plaintiff deposited into his bank account. Plaintiff does not contend that he has returned this compensation, and Defendant alleges that he in fact has not returned it.

Plaintiff agrees that the amount received was the amount properly described in the Agreement, but argues that a separate document, the Avado Brands Corporate Severance Plan ("Severance Plan") applies as well. Paragraph 2 of the Benefits Agreement, above, references the Severance Plan. Plaintiff notes that the Agreement states that Cole's employment was terminated effective October 21, 2005 and that Cole would "receive the benefits described in the Avado Brands Corporate Severance Plan." *Id.* The Severance Plan was attached to the Benefits Agreement when Cole received the documents. The Severance Plan provides for the following severance benefits:

> 1. Basic Severance Pay
> If you are eligible to participate in the Plan, you will receive severance pay equal to two weeks of Base Pay.
>
> 2. Supplemental Severance Benefits
> If you are eligible to participate in the Plan, and you sign and do not revoke the Benefits Agreement…, then you are eligible for Supplemental Severance Pay.

>This Supplemental Severance is equal to two weeks of Base Pay for each Year of Service.
>
>\*\*\*
>
>3. Supplement Severance Benefits Cap
>The two weeks pay per year of service described above is subject to a cap. If you sign the release, in no case would the combined Basic and Supplemental Pay be less than 3 weeks of Base Pay.
>
>\*\*\*
>
>The amount of the cap that applies to your Supplemental Severance Pay depends on your position level with the Company as of your Termination Date. If you are an assistant manager or staff member of the Corporate office, your cap is 4 weeks. Four weeks of pay would therefore be the maximum amount you would receive. . . . The cap is set at a higher number of weeks if you are in a general manager, Department manager, or Director level position. Therefore, you would receive a higher number of weeks, depending on your years with the Company (but the cap may be reduced as outlined in the next paragraph below).

Pl. Dep. Exh. 2, Severance Plan 4-5. Plaintiff brought this suit on April 13, 2006.

**II. Summary Judgment**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts

4

showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

**III. Discussion**

Plaintiff argues that the Agreement is ambiguous.  His interpretation is that, according to the provisions of the Severance Plan, he was to receive two weeks of pay for each year of his eight year service, which would have been sixteen weeks of pay.  Plaintiff also argues fraud in the inducement because he did not understand that signing the Agreement prevented him from bringing legal action against Avado, and that he believed at the time he signed the Agreement that he would receive severance pay under the terms of both the Agreement *and* the Severance Plan because those documents appeared integrated.  Having received four weeks' severance pay, he argues that the doctrine of fraud in the inducement applies to make the Agreement voidable, and therefore he may bring a discrimination suit against Defendant.

Avado argues that the Agreement is clear on its face that Plaintiff was to receive no more than four weeks' severance pay.  Further, even if the Agreement was ambiguous, Defendant argues that Plaintiff's remedy is not to consider the Agreement void, but rather to sue on the enforcement of the Agreement as a contract on the basis that he was not fully compensated for his release in accordance with the contractual terms.  Fraud in the inducement renders a contract voidable, not void, and so Defendant argues that Plaintiff cannot bring suit unless he tenders the consideration already paid, which he has not done.

This Court agrees with Defendant.  First, the Agreement is not ambiguous.  Although it does specifically reference the Severance Plan, the very next sentence of the Agreement states that "[Avado and Cole] agree that the Basic Pay plus Supplemental Severance Pay is a maximum of 4

weeks of Base Pay." There is no reasonable interpretation of this statement other than that which it explicitly provides: that whatever Cole is entitled to under the Agreement and Severance Plan, it will be capped at four weeks' worth of severance pay. No reasonable person would look at this language, along with the accompanying language in the short three-page Agreement that no other promises or agreements apply to affect severance benefits, and conclude anything other than that the severance benefits would be equivalent to four weeks' pay. Even the language of the Severance Plan contemplates a "cap" on the number of weeks' pay to which a discharged employee is entitled, and the Agreement makes that "cap" explicit at four weeks – a number also explicitly contemplated by the Severance Plan for some situations.

The Court also agrees that fraud in the inducement cannot be established. To show fraud in the inducement, Plaintiff must establish that Defendant made a knowing, material misrepresentation with the intent of inducing Plaintiff's reliance, and that Plaintiff relied upon that misrepresentation to his detriment. *ABM Farms, Inc. v. Woods*, 81 Ohio St. 3d 498, 502 (1998). Plaintiff alleges as the misrepresentation the fact that the Agreement and the Severance Plan arrived in the mail clipped together, and that the Agreement makes specific references to the Severance Plan. As described above, this Court is of the opinion that the two documents, on their faces, are clear as to their applicability and interaction. While the Agreement is the only controlling contract, its references to the Severance Plan correspond with the terms of the latter. The severance pay provided for in the Severance Plan is subject to a "cap," and the Agreement caps the pay at four weeks' worth. Therefore, no material misrepresentation results from the two documents being clipped together or referencing one another.

Finally, even if established, fraud in the inducement renders an agreement voidable, not void, and therefore requires the tender of consideration already paid.  *Haller v. Borror Corp.*, 50 Ohio St. 3d 10, 14-15 (Ohio 1990); *Picklesimer v. The Baltimore & Ohio Rd. Co.*, 151 Ohio St. 1 (Ohio 1949).  Plaintiff has not tendered the consideration already paid, and thus cannot present a defense of fraud in the inducement.

**IV. Conclusion**

For the reasons enumerated herein, Defendant's motion for summary judgment (Doc. 19) is hereby granted.  Because the valid Agreement prohibits Plaintiff from bringing discrimination claims such as that alleged in the underlying complaint, this case is dismissed.

IT IS SO ORDERED.

                                                                           s/ *David A. Katz*
                                                                         DAVID A. KATZ
                                                                         U. S. DISTRICT JUDGE